UNITED STATES of America, Plaintiff-Appellee,

v.

Dwight Edward DAMITZ, Defendant-Appellant.

UNITED STATES of America, Plaintiff-Appellee,

v.

Harry Louis VARVIL, Defendant-Appellant.

Nos. 73-2945, 73-2902.

United States Court of Appeals, Ninth Circuit.

April 8, 1974.

Murray B. Guterson (argued), Culp, Dwyer, Guterson & Grader, Seattle, Wash., for defendants-appellants.

Charles Pinnell, Asst. U. S. Atty. (argued), Stan Pitkin, U. S. Atty., Seattle, Wash., for plaintiff-appellee.

Before DUNIWAY and CHOY, Circuit Judges, and TAYLOR,* District Judge.

OPINION

DUNIWAY, Circuit Judge:

Varvil and Damitz appeal from their convictions at a non-jury trial of conspiracy to possess with intent to distrib-

---

* The Honorable Fred M. Taylor, Senior United States District Judge for the District of Idaho, sitting by designation.

ute and possession with intent to distribute quantities of marijuana, in violation of 21 U.S.C. § 841(a)(1) and (b)(1)(B). We affirm.

Appellants' arguments on appeal concern the validity of a search warrant, the validity of the seizure of a notebook, and the sufficiency of the evidence.

## I. *Validity of the Search Warrant*

The search warrant was issued on the basis of an affidavit sworn to by one Larry Dean Annas on November 21, 1972. Annas had been arrested at approximately 9:00 p. m. on November 20 on charges of illegally selling heroin. He agreed to cooperate with the arresting agents, saying that he would take them to a cabin in North Bend, Washington, which he believed to contain approximately 500 pounds of marijuana. He told the agents that he had seen marijuana in the cabin previously, that he had recently transported for Varvil in a 1965 Cadillac a trunkful of marijuana bricks, and that he believed the marijuana was being stored in the cabin. He also gave the agents two marijuana bricks which he said that he had taken from the Cadillac and kept for himself. Annas then accompanied six or seven agents to the cabin, which would have been hard to find if the way were not known. The agents approached to within thirty yards of the cabin and saw a white 1965 Cadillac, matching Annas' description, parked in front of it. Two agents thereupon drove Annas to Seattle, where he met with Assistant United States Attorney Pinnell from 2:00 a. m. until about 6.30 a. m. on November 21.

Mr. Pinnell prepared the following affidavit for a search warrant based upon Annas' story:

1. On approximately November 13, 1972, Harry Lewis [sic] Varvil gave me a 1965 Cadillac bearing California license plates and directed me to drive to San Diego, California, to pick up approximately 500 bricks of marijuana. He told me there was $35,000 in cash in the back of the car. Following his directions, I drove to San Diego, arriving on approximately November 15, 1972, and called him for further directions. Varvil told me to leave the car in front of my motel with the keys under the mat. He stated that the car would be returned to me in several days, filled with marijuana. On November 16, 1972, I picked the car up in El Centro, California. I examined the trunk and found that it was full of marijuana wrapped in white and green paper.

2. On November 17, 1972, or 18, 1972, I arrived in Tacoma, Washington, and turned the car with the marijuana over to Varvil. When he picked up the car Varvil stated he was going to keep the marijuana in his cabin in North Bend, Washington. I kept three of the bricks of marijuana and have turned the two remaining bricks over to Special Agent Vance Huffman on November 20, 1072.

3. On the morning of November 21, 1972, I went to the cabin described in the warrant with Agents of the Office for Drug Abuse Law Enforcement. While there I noted that the car I drove to California was in front of the cabin.

4. I know that Varvil uses the cabin as a stash because approximately one week ago I was in the cabin with Varvil and saw a large amount of marijuana. Varvil stated he had about 250 to 300 bricks of marijuana in the cabin at that time.

At 6:30 a. m. the agents, Pinnell and Annas drove to the home of United States Magistrate Froelich. Annas swore that the affidavit was true and signed it in Froelich's presence; Froelich questioned him briefly and then issued a search warrant, which was executed about one hour later.

At the suppression hearing and trial Annas admitted that his affidavit contained numerous false statements. The statement in paragraph #1 that Varvil "told me there was $35,000 in cash in the back of the car" was false. In paragraph #2, the statement that Varvil

said that he was going to keep the marijuana in the cabin at North Bend was false. He "stated that they was going to take the car up to the cabin, and I had been up to the cabin before, so I figured that the cabin would be in North Bend where it was before when I had been up there." Concerning paragraph #4, Annas had been at the cabin about ten days earlier, but, in his own words, "I didn't see a real large amount of marijuana, I saw a boxful of marijuana sitting on a desk. . . . " Moreover, although Varvil did state that he had used the cabin as a "stash place for . . . a couple hundred pounds of bricks," he did not state that the bricks were "in the cabin at that time." Rather, he had stored the bricks there at an earlier time.

Despite Annas' false statements in the affidavit, the trial court denied appellants' pre-trial motion to suppress, finding that the government agents were unaware of the false statements when the search warrant was executed:

> THE COURT: I do have some problems with the credibility of Mr. Annas. It is difficult to sort out his story. However, I do find from listening to the government agent witnesses, particularly Agent Huffman, and reading the affidavit and hearing the testimony of Mr. Annas as to his explanations, that the government agents were unaware of the falsity, that [sic—of?] the affidavit, when it was executed, and they had no cause to be suspicious of any statement in

it, he supplied them apparently with two portions of the two bricks of the marijuana, he took them to the cabin, and there is the Cadillac. Of course, the most serious matter in connection with the affidavit is this business about seeing a large amount of marijuana and we come to find out from his testimony here that it was a very small amount, remnants. But I don't think that that discrepancy is material enough to void the affidavit.

> As to this $35,000.00 in cash, his explanation here is that he obtained that information when he was in San Diego, apparently, and not when he was assigned the mission before the trip started. I think that is a small discrepancy.

> What I am finding is that there is no evidence that the false portions of the affidavit invalidated the showing of probable cause. I am denying the motion.

### a. May the veracity of the affidavit be challenged?

▆ Appellants argue that because the search warrant was issued on the basis of a materially false affidavit, the affidavit was therefore defective as a showing of probable cause and the fruits of the search must be suppressed. Some circuit courts have held that if the allegations in an affidavit contain a prima facie showing of probable cause, the defendant may not challenge the underlying validity of the affidavit.[1] More recent decisions, however, have permitted such a challenge.[2] The Supreme Court

---

1. See, e. g., Kenney v. United States, 1946, 81 U.S.App.D.C. 259, 157 F.2d 442; Gracie v. United States, 1 Cir., 1926, 15 F.2d 644, 646; cf. United States v. Bowling, 6 Cir., 1965, 351 F.2d 236, 241–242.

2. See, e. g., United States v. Morris, 5 Cir. 1973, 477 F.2d 657, 662–663; United States v. Harwood, 10 Cir., 1972, 470 F.2d 322, 324–325; United States v. Upshaw, 5 Cir., 1971, 448 F.2d 1218, 1221–1222; United States v. Roth, 7 Cir., 1967, 391 F.2d 507, 509; United States v. Gillette, 2 Cir., 1967, 383 F.2d 843, 848–849 (dictum); United States v. Ramos, 2 Cir., 1967, 380 F.2d 717,

720 (dictum); United States v. Suarez, 2 Cir., 1967, 380 F.2d 713, 715–716 (dictum); United States v. Freeman, 2 Cir., 1966, 358 F.2d 459, 463, n. 4 (dictum); King v. United States, 4 Cir., 1960, 282 F.2d 398, 400, n. 4 (dictum); United States v. Pearce, 7 Cir., 1960, 275 F.2d 318, 321–322.

Numerous legal commentators have also discussed this question. See e. g., Forkosh, The Constitutional Right to Challenge the Content of Affidavits in Warrants Issued Under the Fourth Amendment, 34 Ohio St. L.J. 297 (1973); Kipperman, Inaccurate Search Warrant Affidavits as a Ground for Suppressing Evidence, 84 Harv.L.Rev. 825

has extensively examined the sufficiency of the *allegations* contained in affidavits to show probable cause,[3] but it has not squarely decided whether a defendant may go behind the face of an affidavit to challenge the *veracity* of the allegations. The Court last faced this issue in Rugendorf v. United States, 1964, 376 U.S. 528, 531–532, 84 S.Ct. 825, 827–828, 11 L.Ed.2d 887, where it stated:

> Petitioner attacks the validity of the search warrant. This Court has never passed directly on the extent to which a court may permit such examination when the search warrant is valid on its face and when the allegations of the underlying affidavit establish "probable cause"; However, assuming, for the purposes of this decision, that such attacks may be made, we are of the opinion that the search warrant here is valid.

The major reason advanced for not allowing a defendant to challenge the veracity of an affidavit is that to do so would reduce the function of the magistrate to a mere formality. *See, e. g.,* Rosencranz v. United States, 1 Cir., 1966, 356 F.2d 310, 317. This rationale seems to disappear, however, in the light of Mapp v. Ohio, 1961, 367 U.S. 643, 81 S.Ct. 1684, 6 L.Ed.2d 1081; and Weeks v. United States, 1914, 232 U.S. 383, 34 S.Ct. 341, 58 L.Ed. 652, which authorize state and federal courts, respectively, to second-guess the magistrate and review the sufficiency of the affidavit. A review of the veracity of the affidavit may also be dictated by the exclusionary rule. A warrant is issued in an *ex parte* proceeding, in which there is no effective way for the magistrate to determine the veracity of the allegations; the most he can do is question the affiant and examine the affidavit for internal consistency. We therefore hold that it was proper for the trial court here to allow a challenge to the veracity of the affidavit.[4]

b. *May false statements in the affidavit be disregarded if those that are true support a finding of probable cause?*

█ In determining whether there is probable cause to support the issuance of a search warrant, we are limited to the allegations contained within the four corners of Annas' affidavit. United States v. Anderson, 9 Cir. 1971, 453 F.2d 174.[5] Probable cause is shown when the affidavit sets forth facts and circumstances sufficient to warrant a man of reasonable caution to believe that the items to be searched for are located at the premises to be searched.[6] The affidavit must also meet the test of Aguilar v. Texas, 1964, 378 U.S. 108, 84 S.Ct. 1509, 12 L.Ed.2d 723, further explicated in Spinelli v. United States, 1969, 393 U.S. 410, 89 S.Ct. 584, 21 L.Ed.2d 637. The affidavit must reveal the "underlying circumstances"[7] from which Annas concluded that there was marijuana in the Cadillac and the cabin, and the magistrate must be able to conclude from the affidavit that the informant is reliable and trustworthy.

---

(1971); Mascolo, Impeaching the Credibility of Affidavits for Search Warrants: Piercing the Presumption of Validity, 44 Conn.B.J. 9 (1970); Note, Testing the Factual Basis for a Search Warrant, 67 Colum.L.Rev. 1529 (1967); Note, The Outwardly Sufficient Search Warrant Affidavit: What If It's False?, 19 U.C.L.A.L.Rev. 96 (1971).

3. *See, e. g.,* United States v. Harris, 1971, 403 U.S. 573, 91 S.Ct. 2075, 29 L.Ed.2d 723; Spinelli v. United States, 1969, 393 U.S. 410, 89 S.Ct. 584, 21 L.Ed.2d 637; Aguilar v. Texas, 1964, 378 U.S. 108, 84 S.Ct. 1509, 12 L.Ed.2d 723; Jones v. United States, 1960, 362 U.S. 257, 80 S.Ct. 725, 4 L.Ed.2d 697.

4. This is not to hold that a trial court must always permit a *de novo* determination of the validity of the warrant. See Judge Frankel's opinion in United States v. Halsey, 257 F.Supp. 1002 (S.D.N.Y.1962).

5. "It is elementary that in passing on the validity of a warrant, the reviewing court may consider *only* information brought to the magistrate's attention." Aguilar v. Texas, *supra,* 378 U.S. at 109, n. 1, 84 S.Ct. at 1511 (emphasis in original).

6. *See* Berger v. New York, 1967, 388 U.S. 41, 55, 87 S.Ct. 1873, 18 L.Ed.2d 1040.

7. Spinelli v. United States, *supra,* 393 U.S. at 416, 89 S.Ct. 584.

Stripping the affidavit of Annas' lies, the following allegations remain:

1. Varvil gave Annas a 1965 Cadillac and directed him to drive to San Diego to pick up approximately 500 bricks of marijuana. Annas followed Varvil's directions, leaving the car at a particular location and later picking it up in El Centro, California, when he found that the trunk of the car was filled with marijuana.

2. Annas returned the car to Varvil, who stated that he was going to take the car up to "the cabin." Annas had kept four of the bricks of marijuana,[8] two of which he turned over to a federal agent.

3. On the morning of November 21, Annas led federal agents to what he thought Varvil meant when the latter referred to "the cabin" in paragraph #2. He had been there before. The 1965 Cadillac was in front of the cabin.

4. Annas knew that Varvil used the cabin to store marijuana because on November 11, 1972, Annas had seen a "boxful of marijuana sitting on a desk" in the cabin. Varvil also told Annas on November 11 that he, Varvil, had used the cabin as a "stash" for marijuana in the past. Annas did not personally observe marijuana in the cabin on November 21, but had seen marijuana there on November 11.[9]

The standard for probable cause is neither a prima facie showing of criminal activity nor guilt beyond a reasonable doubt. United States v. Harris, 1971, 403 U.S. 573, 584, 91 S.Ct. 2075, 29 L.Ed.2d 723; Spinelli v. United States, *supra;* 393 U.S. at 419, 89 S.Ct. 584. The magistrate is not required to determine whether *in fact* the items to be searched for are located at the premises to be searched, but only whether there is *reasonable ground* to believe that they are there.[10] That standard is clearly met here. Annas' affidavit meets the test of *Aguilar* and *Spinelli.* The affidavit "contains[s] a sufficient statement of the underlying circumstances from which the informer concluded that" Varvil's cabin contained marijuana. Spinelli v. United States, *supra,* 393 U.S. at 416, 89 S.Ct. 584. Annas' reliability is demonstrated by his admitted participation in the conspiracy to obtain marijuana as well as his voluntary surrender of two marijuana bricks to federal agents. These statements and actions were against Annas' penal interest and therefore meet the reliability test of *Aguilar* and *Spinelli.* United States v. Harris, 1971, 403 U.S. 573, 583, 91 S.Ct. 2075, 29 L.Ed.2d 723. *See also* Quigg v. Estelle, 9 Cir., 1974, 492 F.2d 343.

We hold that, if the portions of the affidavit that are true are sufficient to show probable cause, the warrant is valid, even though other portions of the affidavit are false, at least in a case like this one, where the affidavit is that of a third party, not that of a government agent. The case might be different if a government agent had made an affidavit containing material false statements.

c. *Is good faith reliance by government agents on the affiant's veracity sufficient to sustain the affidavit?*

Assuming *arguendo* that the affidavit here does not constitute probable cause to issue a search warrant, we hold alternatively that good faith reliance by the government, including the arresting agents and the Assistant United States Attorney, on the knowingly and materially false statements of a nongovernment affiant will support an affidavit sufficient on its face. A rule excluding evidence because of a Fourth Amendment violation should be motivated by a basic purpose of the Amendment and the

---

8. Annas' affidavit falsely stated that he had kept only three marijuana bricks.

9. Appellants erroneously (and superciliously) assert that "[n]either the warrant nor the affidavit connects the cabin in any way with defendant Damitz or Varvil. It could have been the summer home of a Supreme Court Justice for all the affidavit shows." The presence in front of the cabin of the very car Varvil gave Annas to drive to California connected the cabin with Varvil.

10. Dumbra v. United States, 1925, 268 U.S. 435, 441, 45 S.Ct. 546, 69 L.Ed. 1032.

exclusionary rule, namely the deterrence of lawless police action. *See* Linkletter v. Walker, 1965, 381 U.S. 618, 636–637, 85 S.Ct. 1731, 14 L.Ed.2d 601.[11] This is why the intentional misstatement by an affiant who is a federal agent may vitiate the affidavit, the warrant and the search. *See e. g.*, United States v. Morris, *supra*, 477 F.2d at 662; United States v. Upshaw, *supra*, 448 F.2d at 1222. The affiant who made the misrepresentation here, however, was a non-government informer, and the federal agents had reasonable grounds to believe his story. They did not participate in lawless police action, but rather engaged in exemplary police behavior by making a good faith attempt to verify Annas' story. They obtained from Annas some of the marijuana he had allegedly transported from California for Varvil, and they accompanied him to check to see whether the cabin he referred to had any connection with Varvil. No purpose of the Fourth Amendment would be served by excluding evidence obtained by good faith reliance by the government on an informer who lies.

Appellants attack the government's good faith by contending that the federal agents "were experienced in the tragedies of heroin addiction, knew that the affiant was addicted, and must have realized that either he would be in a state of such panic at missing his 'fix' or that he was actually under the influence of the drugs when the agents placed him in the magistrate's presence."[12]

Informants are usually not members of high society. He who informs on alleged criminals is often a criminal himself; informants in narcotics cases are often drug addicts. The fact that an informant is a known drug drug addict does not make his statements *per se* unreliable. Although Annas testified that he gave himself an injection of heroin while in the custody of federal·agents, the agents who testified did not feel that Annas was either under the influence of heroin or in a state of withdrawal while in federal custody. Under these circumstances, we do not feel that the government agents' knowledge that Annas was a heroin addict undermined their good faith reliance on his false statements. The record supports the trial court's determination that the government agents were unaware of the falsity of the affidavit.

## II. *Seizure of the Notebook.*

■ The search warrant authorized search for and seizure of "a quantity of controlled substances, to wit, marijuana, together with paraphernalia for packaging marijuana." The agents seized, in addition to marijuana and a small scale, a yellow notebook found on top of a counter next to the scale. The notebook contained a series of numbers which the evidence at trial disclosed corresponded closely with the weight in grams of each marijuana brick. A handwriting expert testified that the handwriting in the notebook was the handwriting of Damitz.

Appellants argue that the seizure of the notebook went beyond the scope of the search warrant. We disagree. The seizure of the notebook was clearly justified under the "plain view" exception to the warrant requirement. The agents had a valid "warrant to search a given area for specified objects, and in the course of the search" they "came inadvertently across a piece of evidence incriminating the accused." Coolidge v. New Hampshire, 1971, 403 U.S. 443, 465, 466, 91 S.Ct. 2022, 2038, 29 L.Ed.2d 564. *See also* Louie v. United States, 9 Cir., 1970, 426 F.2d 1398, 1402; United States v. Teller, 7 Cir., 1969, 412 F.2d 374, 379. Moreover, the fact that the notebook was "mere evidence" and not an "instrumentality of the crime" does not invalidate the seizure. Warden v. Hayden, 1967, 387 U.S. 294, 87 S.Ct. 1642, 18 L.Ed.2d 782.

11. *See also* Olmstead v. United States, 1928, 277 U.S. 438, 485, 48 S.Ct. 564, 575, 72 L. Ed. 944 (Brandeis, J., dissenting): "If the Government becomes a lawbreaker, it breeds contempt for law; it invites every man to become a law unto himself; it invites anarchy."

12. Annas was with the federal agents for a continuous period of approximately 14 hours.

### III. *Sufficiency of the Evidence.*

A government chemist testified that the substance seized from the cabin which was submitted to him for analysis was "marijuana." 21 U.S.C. § 802 excludes from the term "marihuana" certain parts of the plant Cannabis sativa L., such as the mature stalks of the plant, oil or cake made from the seeds of the plant, etc. The chemist testified only that the substance he examined was "marijuana," and appellants argue that the government did not establish that the substance seized from the cabin was the part of the marijuana plant the possession of which is illegal. This argument is without merit. The term "marihuana" is precisely defined in 21 U.S.C. § 802, and it must be presumed that the witness' use of that term referred to the parts of the plant defined therein. The failure of the defense to object, cross-examine, or present defense witnesses on what the substance was supports the presumption that everyone knew what the chemist was referring to when he used the term.

Affirmed.