UNITED STATES of America, Plaintiff,

v.

Albert M. LEFKOWITZ, Edward W. Babic, Defendants.

UNITED STATES of America, Plaintiff,

v.

Patricia SULLIVAN, Defendant.

Nos. CR78–758–RMT & CR78–717–F.

United States District Court,
C. D. California.

Jan. 18, 1979.

U. S. Atty. Andrea Sheridan Ordin, and Asst. U. S. Atty. Steven Kramer, Los Angeles, Cal., for plaintiff.

Bruce I. Hochman, Beverly Hills, Cal., for defendant Babic.

Flax & Rosenfield, Los Angeles, Cal., for defendant Lefkowitz.

## OPINION

TAKASUGI, District Judge.

Defendant Albert Lefkowitz (herein "Lefkowitz"), Patricia Sullivan (herein "Sullivan"), and Edward Babic (herein "Babic") have moved this court to suppress evidence seized by Internal Revenue Service (herein "IRS") agents pursuant to a search warrant. Adjudication of this motion rests upon the sufficiency of the affidavits of Martin Laffer (herein "Laffer"), Special Agent for the Criminal Investigation Division of the IRS, in establishing probable cause to search and seize the items sought to be suppressed. Accordingly, analysis of the present motion must begin by examining the affidavits [1] of Special Agent Laffer made to the Magistrate, who issued two search warrants based solely upon the affidavits.

The affidavits state that on or about June 12, 1975, affiant served an administrative summons, under Section 7602 of the Internal Revenue Code, for the production of corporate records of Savon Rent-a-Car, Inc.; Savings Rent-a-Car, Inc.; Best Rate Rent-a-Car, Inc.; N/U Rent-a-Car, Inc.; Value Rent-a-Car, Inc.; Rent-a-Bug, Inc.; Barnhart-Morrow Consolidated, Inc.; National United Industries, Inc.; and National United Leasing, Inc., on defendant Lefkowitz, president of said corporations, and Martin Fisher, controller of said corporations. On June 23, 1975, in response to the summons, Lefkowitz, Martin Fisher, and defendant Babic, as attorney for Lefkowitz and Martin Fisher, appeared at the IRS office without any of the summoned records. Babic informed the affiant that "many of the records summoned did not exist, had been destroyed or could not be located," but offered to provide any existing records at a later date.

On July 14, 1975, Babic and Martin Fisher met with affiant and IRS agent Lindholm at their corporate offices (9171 Wilshire Blvd., Suite 335, Beverly Hills), at which time some corporate records, including journals, minute books, and other documents, which had been requested in the June 12, 1975 summons, were provided.

On November 7 and 10, 1975, the affiant received information from a confidential informant, whose identity was revealed to this court through an *in camera* lodging as Helen Lefkowitz, defendant Lefkowitz's wife.[2] The informant was married to Lefkowitz on August 24, 1952, separated in July or August, 1975, and divorced in 1977. Sullivan, who was/is secretary of some of the corporations, began living with Lefkowitz in September, 1975, prior to the time affiant received information from Helen Lefkowitz.

Helen Lefkowitz worked at the corporate offices. The information provided by her related to: (1) the re-creation, omissions, and alterations of the 1973 cash receipts and cash disbursement journal, which were provided to the IRS on July 14, 1975, and (2) the relocation of summoned corporate records. Some of the corporate records were removed from the corporate offices prior to the July 14, 1975 meeting with the IRS and were returned to said offices after that meeting. During this meeting, said records were located in another office on the same floor as that of the corporate offices. Additionally, she provided information that other records were packed in boxes and moved from the corporate offices to Sullivan's apartment, and later (in September 1975) from Sullivan's apartment to Lefkowitz's residence.

In addition to Helen Lefkowitz's information, the affidavits included information provided by Marc Nestico (herein "Nesti-

---

1. While there were two affidavits presented to the Magistrate, they were identical.

2. During the hearing on this suppression motion, this court revealed the informant's identity as Helen Lefkowitz, the wife of defendant Lefkowitz. Said disclosure was made because the information provided by her and used in the affidavit clearly indicates that her testimony is relevant to the issue of defendants' guilt and, as such, knowledge of her identity would be necessary in preparation for the defense.

co"). Through an interview with Nestico, a past employee of National United Industries, Inc., affiant learned that Nestico had removed boxes containing corporate records from Sullivan's apartment to Lefkowitz's home pursuant to the directions of Lefkowitz. Nestico further informed the affiant that "Albert Lefkowitz told him that the boxes were important and, Nestico, was not to tell anyone about them."

Pursuant to the information stated above, along with other information provided in the affidavits, the Magistrate issued two search warrants: one to search the corporate offices and the other to search Lefkowitz's residence. At no time, however, was the identity of the informant revealed to the Magistrate.

Both warrants were then executed. Agent Laffer was with the team searching the corporate offices and agent Lindholm headed the team searching Lefkowitz's residence.

The search of the corporate offices revealed a number of records that were mentioned in the summons, but not the search warrant. Lefkowitz's permission was obtained to microfilm said records. A phone call was then received from the IRS team searching the Lefkowitz residence. The call relayed information to the effect that certain records were found at the residence including: (1) some that were covered in the summons but not in the warrant, and (2) others that were not covered by either the summons or warrant. When Lefkowitz was asked for permission to microfilm records described in (2), Lefkowitz first decided to call Babic.

Over the phone, Babic gave no objection to microfilming the records called for in the summons, but told IRS agent McManigal to prepare a list of records described in (2) and issue a summons for their production. Among the items not described in the warrant or summons found during the search was an allegedly authentic 1973 cash receipt and cash disbursement journal of N/U Rent-a-Car, Inc.

Lefkowitz was served with a summons for production of records at the close of the search of his residence. On December 1, 1975, Lefkowitz and Babic appeared at the IRS office and delivered the summoned records under protest.

## I

### STANDING

Before reaching the legality of the search and the substantive issues raised, the threshold question of standing must first be addressed. The government contends that the defendants lack standing to suppress the evidence seized at the corporate offices.

Defendants Lefkowitz and Sullivan were corporate officers of all or most of the corporations whose offices, located in suite 335, 9171 Wilshire Blvd. (hereinafter "suite"), were searched. Both defendants were physically present at the suite during the search. Lefkowitz asserts, by virtue of his presence, that he has standing to challenge the search and seizure. This argument, however, is without merit. Mere presence, in and of itself, has been rejected by the Supreme Court, in *Rakas v. Illinois*, —— U.S. ——, 99 S.Ct. 421, 58 L.Ed.2d 387 (1978), as a basis for standing. A defendant who seeks to exclude evidence must establish that the search or seizure violated his or her Fourth Amendment rights, which in turn "requires a determination of whether the disputed search and seizure has infringed an interest of defendant which the Fourth Amendment was designed to protect." *Id.* at ——, 99 S.Ct. at 429.

Examination of the facts, nevertheless, reveals a sufficient proprietary interest in the suite, which was the target of the search and where corporate records were seized, to impart standing upon both Lefkowitz and Sullivan. The suite was not only the corporate offices of the corporations whose records were seized of which Lefkowitz and Sullivan acted as officers, but was also where defendants Lefkowitz and Sullivan maintained their place of employment. "It has long been settled that one has standing to object to a search of his [or her] office, as well as of his [or her]

home." *Mancusi v. DeForte*, 392 U.S. 364, 88 S.Ct. 2120, 20 L.Ed.2d 1154 (1968).

The government urges this court to limit standing to the search conducted of Lefkowitz's and Sullivan's own offices and desks at the corporate offices and not to any other areas in the suite. The suggested limitation must be rejected by this court. The fact that Lefkowitz and Sullivan did not reserve exclusive use of the entire suite does not, in and of itself, vitiate a finding of a reasonable expectation of privacy. *See Mancusi v. DeForte, supra* at 368–9, 88 S.Ct. 2120. The suite was apparently not open to the general public. Both Lefkowitz and Sullivan could reasonably expect that the "private" suite, where both were employed, would be permissibly entered only by the employees of the corporations and those individuals receiving permission from the appropriate individuals. This expectation of privacy would be infringed, as it was in the case at bar, by the examination and seizure of such corporate records by government officials.

While this court finds standing as to Lefkowitz and Sullivan, defendant Babic's assertion of standing is rejected. Babic, whose place of employment was not at the suite, has not made a sufficient showing of a possessory or proprietary interest in the area searched, or the property seized.

## II

## FACIAL EXAMINATION OF AFFIDAVIT

■ Defendants challenge the validity of the subject search warrants, contending that they were not issued upon probable cause in violation of the Fourth Amendment to the Constitution. Based upon a facial examination of the warrants and the affidavits of agent Laffer, incorporated in the warrants, this court finds that there is probable cause to support the issuance of the warrants.

■ Determining the sufficiency of the search warrants requires a finding of probable cause to believe that a crime has been committed and that evidence of the crime will be found at the location to be searched.

Laffer's affidavits indicate, based upon the personal knowledge of informants, that some corporate records summoned by the IRS, which defendant Babic represented to affiant "did not exist, had been destroyed or could not be located," did in fact exist and were removed from the corporate offices. Additionally, it appears from the affidavits that some records, which were provided to affiant, were actually prepared subsequent to the issuance of the summons, backdated, and altered.

The locations searched pursuant to the subject warrants were the corporate offices and Lefkowitz's residence. According to the affidavits, corporate records could be traced to both Lefkowitz's residence and the corporate offices.

In the case at bar, finding probable cause requires only a finding that the informants are credible.

■ When probable cause is based, in part, on information supplied by an informant, the two-prong test of *Aguilar v. Texas*, 378 U.S. 108, 84 S.Ct. 1509, 12 L.Ed.2d 723 (1964) and *Spinelli v. United States*, 393 U.S. 410, 89 S.Ct. 584, 21 L.Ed.2d 637 (1969), requires that the Magistrate issuing the warrant be informed of: (1) some of the underlying circumstances from which the informant draws his or her conclusions, and (2) some of the underlying circumstances from which the affiant officer concluded that the informant was "credible," or his information "reliable."

Laffer's affidavits utilize information provided by two untested informants: (1) a confidential source, and (2) Nestico, a former employee of National United Industries, Inc., one of the corporations of which defendant Lefkowitz was president and defendant Sullivan was secretary.

It is readily ascertainable from the affidavits that the information provided by both informants was based on personal knowledge.

Given that the informants were untested, the affiant's conclusion that the informants

were credible was based on sufficient corroboration. The corroborated information provided by the confidential informant included: (1) the location of Lefkowitz's bank accounts, (2) the fact that Lefkowitz's residence was remodeled by an employee of National United Industries, Inc., (3) the destinations of personal trips taken by members of Lefkowitz's family, and (4) the fact that Lefkowitz received a $25,000 loan from his sister, which was repaid by National United Industries, Inc. Although most of the corroborated facts were arguably more related to Lefkowitz's personal life rather than to his corporate activities, the extensiveness of the corroborated information, considered together with the information regarding the employee of National United Industries, Inc., indicates more than sufficient knowledge of Lefkowitz to support a finding of reliability with respect to information provided on Lefkowitz's corporate activities.

Nestico's information is also reliable since it was corroborated by a disinterested third party who informed the affiant of her observation of Nestico's removal of "six to eight cardboard boxes from the [Sullivan] apartment to his vehicle in October 1975."

Additionally, the informants tend to corroborate each other in that the information provided by each informant supplies a separate but connecting link in the movement of the corporate records.

Therefore, the affidavits are sufficient on its face to support the Magistrate's finding of probable cause.

## III

### CHALLENGE OF VERACITY OF AFFIDAVIT

Defendants' challenge of the search warrant's validity goes behind the warrant to question the veracity of the supporting affidavits. Defendants contend that the non-disclosure to the Magistrate of the identity of the confidential informant, vitiates the warrant. Defendants' contentions are that the disclosure of the informant's identity to the Magistrate would have re-

vealed the government's use of Lefkowitz's wife as an informant, which is both a violation of Lefkowitz's Fourth Amendment rights and a violation of Lefkowitz's marital privileges. Defendants contend that either violation necessitates that the information provided and the fruits thereof be stricken from the affidavits.

■ In order to consider the merits of this contention, the court must first determine whether going behind the four corners of the affidavit is warranted. Generally, the determination of probable cause, and the scope of judicial review thereof, is limited to the four corners of the affidavit. *United States v. Anderson*, 453 F.2d 174 (9th Cir. 1971).

In *United States v. Damitz*, 495 F.2d 50 (9th Cir. 1974), the Ninth Circuit addressed a criminal defendant's attack on a search warrant challenging the veracity of the supporting affidavit and held, in that case, that it was proper for the trial court to allow such a challenge. The warrant issued therein was based on an affidavit of a third party, not a government agent, and contained false statements. The court held that "if portions of the affidavit that are true are sufficient to show probable cause, the warrant is valid, even though other portions of the affidavit are false . . . ." *Id.* at 55. The court went on to state:

"Assuming *arguendo* that the affidavit here does not constitute probable cause to issue a search warrant, we hold alternatively that good faith reliance by the government, including the arresting agents and the Assistant United States Attorney, on the knowingly and materially false statements of a nongovernmental affiant will support an affidavit sufficient on its face."

*Id.*

In *Damitz*, the court expressly left open the case where the affiant was a government agent, and stated that such a case might be different. Clearly, such a case assumes a lack of good faith on the part of the government agent/affiant, and, unlike the *Damitz* case, goes to the heart of the purpose of the exclusionary rule.

The *Damitz* court referred to the deterrence of lawless police action as the basic purpose of the Fourth Amendment and the exclusionary rule. The court stated that "[t]his is why the intentional misstatement by an affiant who is a federal agent may vitiate the affidavit, the warrant and the search." *Id.* at 56.

Subsequent to *Damitz*, the Supreme Court addressed the same question and has modified the answer. In *Franks v. Delaware*, 438 U.S. 154, 98 S.Ct. 2674, 57 L.Ed.2d 667 (1978), Justice Blackmun stated that the issue was whether a criminal defendant ever has "the right, under the Fourth and Fourteenth Amendments, subsequent to the *ex parte* issuance of a search warrant, to challenge the truthfulness of factual statements made in an affidavit supporting the warrant . . . ." *Id.* at 155, 98 S.Ct. at 2676, 57 L.Ed.2d at 672.

The Court, in *Franks*, responded by stating:

"[W]here the defendant makes a substantial preliminary showing that a false statement knowingly and intentionally, or with reckless disregard for the truth, was included by the affiant in the warrant affidavit, and if the allegedly false statement is necessary to the finding of probable cause, the Fourth Amendment requires that a hearing be held at the defendant's request. In the event that at that hearing the allegation of perjury or reckless disregard is established by the defendant by a preponderance of the evidence, and, with the affidavit's false material set to one side, the affidavit's remaining content is insufficient to establish probable cause, the search warrant must be voided and the fruits of the search excluded to the same extent as if probable cause was lacking on the face of the affidavit."

*Id.*

The case at bar differs from *Franks* in that here the misstatement is the omission by the government affiant in failing to inform the Magistrate of the confidential informant's identity, rather than an affirmative false statement. However, there appears to be no logical reason to treat an omission differently from an affirmative statement, provided that the omission produces the same practical effect as does an affirmative statement, i. e., it leads to a misconception.

The preliminary question here is whether the informant's identity should have been disclosed to the Magistrate. Defendants claim that it should have been disclosed in order to enable the Magistrate to adequately determine: (1) the informant's credibility, and (2) whether the use of Lefkowitz's wife as an informant constituted an unreasonable search or violation of the marital privilege.[3]

■ Although this court finds no constitutional or marital privilege violation in using a spouse/informant, this court agrees with defendants' first contention that the informant's identity should have been disclosed to the Magistrate because of the critical effect it would have had, under the circumstances of this case, in the determination of the informant's credibility. In this case, the confidential informant was not only present at the times during which corporate records were allegedly altered and concealed, but she was also the recently estranged wife of Lefkowitz. Under these circumstances, the informant may have harbored an antagonistic state of mind, which was not ascertainable on the face of the affidavit, and such state of mind could have affected the reliability of her information. Revealing the informant's identity to the Magistrate would have appropriately allowed the Magistrate to consider these factors in determining the informant's credibility.

---

**3.** The interest raised by Lefkowitz in preventing his wife from testifying against him has been recognized in terms of the evidentiary rule of marital privilege, but such privilege does not rise to the stature of a constitutional right. *United States v. Doe*, 478 F.2d 194 (1st Cir.

1973); *Matter of September, 1975 Special Grand Jury*, 435 F.Supp. 538 (N.D.Ind.1977).

Also, the marital privilege is inapplicable here since the spouse/informant has not testified, but rather has only provided information to a government agency.

However, in this case, because of the extensiveness of the corroboration, even with the knowledge of the informant's identity, the Magistrate could still have found the informant credible and, therefore, the information provided properly usable. Hence, correcting the misstatement is not material to the finding of probable cause.

Therefore, since the affidavit would still be sufficient to establish probable cause even if the omission were cured, a hearing under *Franks* is not warranted.[4]

Consequently, upon a facial examination, the warrant affidavit is sufficient to establish probable cause, and accordingly, defendants' motion to dismiss is denied.

---

4. Defendants claim that probable cause for the issuance of a search warrant did not exist at the time of issuance—that the facts underlying the warrant were too remote in time from the execution. This claim, however, is rejected. The corporate records had been seen at the corporate offices by Helen Lefkowitz and at the Lefkowitzs' residence by Nestico as recently as mid-October, 1975 and the end of October, 1975, respectively. The warrants were executed on November 17, 1975. This passage of time is not sufficient to undermine the finding of probable cause in light of the type of evidence sought to be seized and the area searched.