**UNITED STATES of America,
Plaintiff-Appellee,**

v.

**James Arthur HILLYARD,
Defendant-Appellant.**

**No. 81–1413.**

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted March 2, 1982.

Decided May 26, 1982.

William P. Koontz, Cottage Grove, Or., for defendant-appellant.

Thomas Coffin, Asst. U. S. Atty., Eugene, Or., for plaintiff-appellee.

Before KENNEDY, FARRIS and NORRIS, Circuit Judges.

KENNEDY, Circuit Judge:

Appellant James Hillyard suffered the jury's conviction on five counts of interstate transportation of stolen motor vehicles, six counts of concealment of stolen motor vehicles, and one count of interstate transportation of stolen property. Hillyard contends principally that some of the stolen items were seized by general, and so unlawful, search warrants, and also that a logbook and map were seized improperly from the cab of one vehicle. We find the warrants gave proper directions to the officers conducting the search and were lawful and in satisfaction of the particularity requirement of the fourth amendment. We affirm.

Seven stolen vehicles were seized by officers at three locations. Appellant does not challenge seizure of two vehicles at the residences of his acquaintances. He does challenge seizure of a Ford pickup and a Datsun automobile at his own residence in Cottage Grove and seizure of a truck, tractor, and low-boy trailer at property known as "Eleven Acres Wrecking," which was owned by an associate of Hillyard and where Hillyard was storing equipment.[1]

Two search warrants are challenged here. Both were issued based on an affidavit of special agent Enyart of the FBI. The Enyart affidavit set out grounds for his belief that at least ten stolen motor vehicles and pieces of heavy equipment were to be found on the specified properties. The affidavit described in detail the prior ownership and Hillyard's acquisition of four pieces of equipment. Enyart stated he had seen these at one or the other of the locations later searched. The affidavit further averred that Hillyard concealed the thefts by grinding or altering identification numbers on the vehicles and by substituting other identification numbers. There were lengthy supporting allegations that furnished ample probable cause to believe Hillyard ran a stolen vehicle operation. An allegation of importance to this case is Enyart's disclosure, based on statements of two informants, that Hillyard had a box or sack full of vehicle serial number plates and special rivets for attaching them, plus titles, documents, and keys to fit different kinds of machinery. The affidavit recited certain statements by Hillyard indicating criminal activity. Based on these allegations, Enyart stated he had reason to believe that in executing the warrants he would encounter other unknown vehicles that would prove to be stolen upon examination. He requested, therefore, authorization to inspect all motor vehicles and heavy equipment at the locations and to seize those shown to be stolen. Enyart detailed at length how the stolen vehicles could be identified at the scene of the search, explaining that openly displayed motor vehicle identification numbers can be compared with other numbers on the vehicle that are hidden and often can be com-

---

1. Hillyard had an oral agreement with the owner of the property, Farrell, which allowed Hillyard to occupy a portion of the premises for storage and repair of his vehicles. Hillyard accordingly has standing to challenge the search and seizure on the premises.

pared with records kept by law enforcement officials and legitimate dealers.

Upon review of the affidavit, the magistrate issued search warrants for Hillyard's Cottage Grove premises and Eleven Acres Wrecking yard. In addition to describing certain pieces of stolen equipment to be seized, the warrants "commanded" the executing officers "to search all motor vehicles and heavy equipment found on the premises to determine if said vehicles are stolen and to seize those vehicles which possess altered or defaced identification numbers or which are otherwise determined to be stolen."

In executing the warrants, the officers did examine numerous vehicles at the Cottage Grove residence and Eleven Acres Wrecking and discovered two stolen vehicles in addition to those Enyart had known of before. The officers also seized a notebook and logbook from the cab of one of the stolen vehicles, containing entries and a map which placed Hillyard in Texas at the time and place where one of the vehicles was stolen.

Hillyard contends the search was a general one and beyond the scope of what a warrant can properly authorize. The contentions are ill-founded. The vehicles and the documents were properly seized and were admissible.

The allegations in support of each warrant were more than sufficient to establish probable cause; the only issues that deserve discussion here concern the scope of the warrant and the searches made to execute them.

■ Hillyard first argues that the warrants were improper, or lacked probable cause, because two vehicles were listed on both warrants, and "clearly the vehicles cannot be in two places at once." When property to be seized is being moved from place to place, it may be reasonable to issue warrants directed to multiple locations, and officers need not confine themselves to chance by choosing only one location for a search. Here it was proper for the magistrate to direct a search of both of the locations identified in the affidavit because it was reasonable that the equipment would be found at either or both of the premises.

*United States v. Johnson,* 641 F.2d 652, 659 (9th Cir. 1981); *United States v. Hendershot,* 614 F.2d 648, 654 (9th Cir. 1980).

The main insistence of appellant is that the authorization for search of all vehicles on the premises makes the warrant a general and impermissible one, and that evidence supporting the counts for two vehicles not previously identified as stolen should have been suppressed.

■ The requirement that a warrant not be a general one is in part a function of the probable cause rule and is in part derived from the fourth amendment requirement that warrants be ones "particularly describing the place to be searched, and the persons or things to be seized." The particularity requirement thus guards the right to be free from unbounded general searches. The central protection has been stated as insuring that "nothing is left to the discretion of the officer executing the warrant." *Marron v. United States,* 275 U.S. 192, 196, 48 S.Ct. 74, 76, 72 L.Ed. 231 (1927). Limiting discretion in this sense is the requirement that officers' actions be sufficiently circumscribed so that the magistrate issuing the warrant is fully apprised of the scope of the search, and can make the determination that the search in all of its dimensions is based upon probable cause and particular descriptions.

We have relied upon this principle to describe a search unlawfully general where the accompanying warrant "left to the executing officers," rather than to the magistrate upon issuance, "the task of determining what items fell within broad categories stated in the warrant" and where there were no clear guidelines distinguishing between property which was contraband and that which was not. *United States v. Drebin,* 557 F.2d 1316, 1322–23 (9th Cir. 1977), *cert. denied,* 436 U.S. 904, 98 S.Ct. 2232, 56 L.Ed.2d 401 (1978); *see United States v. Marti,* 421 F.2d 1263, 1268 (2d Cir. 1970), *cert. denied,* 404 U.S. 947, 92 S.Ct. 287, 30 L.Ed.2d 264 (1971).

The particularity guarantee does not preclude use of generic language. In many cases officers are unable to specify in ad-

vance all seizable evidence on the premises to be searched. *See United States v. Cook*, 657 F.2d 730, 733 (5th Cir. 1981) (discussing cases upholding warrants with generic descriptions). For example, in *United States v. Federbush*, 625 F.2d 246 (9th Cir. 1980), we upheld the use of a search warrant that described the property to be seized generically as "documents, securities, papers, and all mechanical instruments such as check protectors and specialized writing devices associated with issuing such documents, pertaining to [a certain bank] . . ., and are being held in violation of United States Code, Title 18, Section 2314." *Id.* at 251. The warrant was proper because it specified the crime and the enterprise to which the items listed were to pertain, *cf. Andresen v. Maryland,* 427 U.S. 463, 479–82 & 480 n.10, 96 S.Ct. 2737, 2748–49 & 2749 n.10, 49 L.Ed.2d 627 (1976) (upholding search warrant listing in generic terms various types of documents and including catch-all phrase interpreted as authorizing search for other evidence relevant to criminal fraud involving certain real estate).

When there is probable cause to believe that premises to be searched contains a class of generic items or goods, a portion of which are stolen or contraband, a search warrant may direct inspection of the entire class or all of the goods if there are objective, articulated standards for the executing officers to distinguish between property legally possessed and that which is not. *United States v. Klein*, 565 F.2d 183, 188 (1st Cir. 1977); *see Montilla Records of Puerto Rico, Inc. v. Morales*, 575 F.2d 324 (1st Cir. 1978). A search warrant authorizing inspection will not be a general warrant if such standards reasonably guide the officers in avoiding seizure of protected property, and if upon return of the warrant the magistrate may review the search to determine whether the instructions were followed and legitimate property and privacy interests were protected. The standards may be contained in the search warrant or, if certain conditions are met, in the accompanying affidavit. The search warrant may be construed with reference to the affidavit for purposes of satisfying the particularity requirement if (1) the affidavit

accompanies the warrant, and (2) the warrant uses suitable words of reference which incorporate the affidavit therein. *In re Seizure of Property Belonging to Talk of the Town Bookstore, Inc.*, 644 F.2d 1317, 1319 (9th Cir. 1981); *see United States v. Klein*, 565 F.2d at 186 n.3.

The nature, extent, and circumstances of the criminal activity are relevant in determining the particularity requirements of a warrant in the above respects. Cases may arise in which stolen goods are intermingled with and practicably indistinguishable from legitimate goods. If commingling prevents on-site inspection, and no other practical alternative exists, the entire property may be seizable, at least temporarily. *See United States v. Cortellesso*, 601 F.2d 28 (1st Cir. 1979), *cert. denied*, 444 U.S. 1072, 100 S.Ct. 1016, 62 L.Ed.2d 753 (1980); *cf. United States v. Roche*, 614 F.2d 6 (1st Cir. 1980). In still other circumstances, the examination of the class of items to determine their contraband character may require such refined legal judgment that it should be conducted by the magistrate, not the officers. *See United States v. Sherwin*, 539 F.2d 1, 8 (9th Cir. 1976) (en banc), *cert. denied*, 437 U.S. 909, 98 S.Ct. 3101, 57 L.Ed.2d 1140 (1978). Those exceptional cases are not before us here, for in this case the officers availed themselves of guidelines set forth in the affidavit and incorporated in the warrant that enabled them to conduct an on-site inspection.

The agents and magistrate had probable cause to believe at least that some vehicles other than those with known backgrounds were stolen. Agent Enyart believed that ten specified vehicles, five of which he described in considerable detail, had been stolen. Hillyard's pattern of transporting stolen vehicles and altering identification numbers had begun at least seven years earlier, and Hillyard had contacts in other states looking for hot items to match validly registered, but wrecked, equipment. The magistrate reasonably could conclude that some other pieces of heavy equipment to be found on the premises probably had been stolen, thus satisfying the prerequisite to the use of a general authorization.

More importantly, the requirement of particularity was preserved. The executing agents did not seek authorization simply to seize all vehicles on the premises, *cf. Cortellesso, supra.* Rather, agent Enyart established in his affidavit procedures to differentiate stolen vehicles from those legally owned. His affidavit explained that vehicle alterations could be discovered by comparing secret identification numbers with those openly displayed, that true numbers could be checked with law enforcement computerized lists, and that some engine serial numbers could be checked with lists provided by sellers of heavy equipment. Enyart sought authorization to inspect all vehicles on the premises to determine if they were stolen, and then to seize stolen vehicles. The magistrate incorporated these guidelines into the search warrant by authorizing only a search of the vehicles and a seizure of those with altered or defaced identification numbers or those otherwise determined to be stolen. Hillyard was amply protected against an unreasonable general search and seizure. *Cf. United States v. Abrams,* 615 F.2d 541, 545 (1st Cir. 1980) (dictum) (if means of identification requires some analysis and matching, such as comparing patient invoices with test records, there would be sufficient guarantee of particularity). The magistrate and agents properly restricted the scope of their search. At least some unknown vehicles were believed to be seizable, and they could be properly identified. The intrusion from inspection of the vehicles was minimal, and as to what was to be taken, nothing was left to the discretion of the executing officers. The warrant was valid, and the low-boy trailer[2] and Datsun[3] properly were seized.

Appellant also challenges the trial court's refusal to suppress two pieces of evidence found in the cab of a stolen truck which was seized during the search of Eleven Acres.[4] The officers found a "driver's logbook" revealing Hillyard's presence in Texas at the time and place of certain thefts, and a spiral notebook containing a hand-drawn map of the location of a ranch in Texas from which Hillyard had stolen a tractor which he then traded for a vehicle that supported two of the counts against him. The Government contends the items were seizable either as part of the contents of the seized cab, as evidence in plain view, or even as part of an inventory search. We need not discuss all these contentions, because we find that the items properly could have been perused as evidence in plain view at the time the truck was seized, and could have been seized once their contents were known. Whether the items were in fact examined at first or later pursuant to an inventory is not clear and not relevant.

In the course of a legal search, officers may make a warrantless seizure of objects inadvertently found in plain view, if it is "immediately apparent to the police that they have evidence before them." *Coolidge v. New Hampshire,* 403 U.S. 443, 466, 91 S.Ct. 2022, 2038, 29 L.Ed.2d 564 (1971). The incriminating nature of an object, though, may not be immediately apparent without closer inspection. We have

---

**2.** The low-boy trailer was inspected by both state and federal officers and actually was seized by a state officer pursuant to the state search warrant, which contained an authorization similar to that in the federal warrant. An Oregon statute permits seizure of vehicles with altered or defaced identification numbers. We do not accord any significance to the fact that the trailer actually was seized by the state officer, because under our holding the federal agent validly could have seized the trailer pursuant to the federal warrant.

The officers had ample reason to believe the trailer was stolen. The officers could tell that the manufacturer's serial numbers had been ground off one area of the trailer. Hillyard had registered the trailer as "homemade," but it

appeared to the experienced officers to be manufactured. Further, the officers knew from informants that the truck, originally silver-gray, had been painted yellow by Hillyard. Upon inspection, the agents could tell that the trailer had been painted yellow and that the undercoat was silver-gray.

**3.** The publicly displayed vehicle identification number for the Datsun had been removed.

**4.** Federal agents and state officers conducted the searches. Federal agents seized the truck and state officers seized the logbook and spiral notebook inside the cab. Again, as with the trailer, see note 2 *supra*, this does not alter our analysis.

stated that an officer may inspect an item found in plain view to determine whether it is evidence of a crime if he "has a 'reasonable suspicion' to believe that the discovered item is evidence." *United States v. Wright*, 667 F.2d 793, 798 (9th Cir. 1982). In *United States v. Damitz*, 495 F.2d 50, 56 (9th Cir. 1974), we upheld the warrantless seizure of a notebook that was shown, after examination, to contain evidence of drug sales, when the notebook was found during a valid search for drugs and drug paraphernalia, in plain view next to the drug paraphernalia. Similarly, other courts have validated searches of suspicious documents under the plain view exception even though a perusal, generally brief, of the documents was necessary to perceive their relevance. *See United States v. Ochs*, 595 F.2d 1247, 1256–57 & 1257 n.8 (2d Cir.) (Friendly, J.), *cert. denied*, 444 U.S. 955, 100 S.Ct. 435, 62 L.Ed. 328 (1979) (discussing and citing cases).

 The logbook and notebook were found in plain view in the cab of a concededly stolen truck. It was reasonable for the officers at least to peruse or skim through the items to see whether they were relevant or incriminating. Part of the criminal scheme was to transport vehicles and to alter vehicle identification numbers, and it was reasonable for the officers to suspect that the notebook and driver's log in the stolen vehicle contained relevant entries in this regard. It was proper therefore for the officers to examine what they found within the stolen vehicle.[5] The trial court did not err in admitting the map and logbook into evidence.

The seizure of the two items here is unlike that invalidated in *United States v. Wright, supra*. In *Wright*, the agents executed a search warrant authorizing the seizure of a person's driver's license as evidence of alleged federal firearms violations.

An officer from the Federal Bureau of Alcohol, Tobacco and Firearms found a small black ledger on the premises, and after looking through it without finding the license, showed it to an assisting narcotics agent, who inspected the contents and concluded that it contained narcotics notations. The ledger was used in *Wright* as evidence of the crime of tax evasion for failing to pay taxes on narcotics income. We held the ledger could not have been seized validly under the plain view exception because nothing about the ledger, its whereabouts, or its contents immediately indicated to the first officer that it contained evidence of crime. Its incriminating nature was revealed only after a close examination and minute inspection. 667 F.2d at 799. The court distinguished *Damitz* on two grounds: in *Damitz*, first, the notebook had been found on a counter next to scales commonly used in connection with drug sales and after the discovery of marijuana, so there was reason to believe the notebook contained criminal evidence, and second, the notebook containing drug sale notations "was related to the general purpose of the authorized search" for evidence of narcotics violations. *Id.* at 799 n.7.

The seizure of Hillyard's notebook and logbook resembles the plain view seizure in *Damitz*, not that invalidated in *Wright*. The items were found not just in close proximity of, but inside the cab of, a stolen, incriminating vehicle, and they were related quite apparently to the crimes under investigation. The officers were entitled to peruse and seize the evidence.

Appellant's convictions on all counts are therefore AFFIRMED.

---

5. The state officer who seized the items knew at the time of the search, from one of the informants, that Hillyard had traveled in the truck to Texas and had stolen a model 4020 John Deere tractor from a ranch to trade for the tractor he later transported to Oregon. The officer had received a map of the ranch and area from Texas authorities. The officer realized upon skimming the logbook that it contained entries of places and times corresponding to those surrounding the Texas thefts, and he recognized the hand-drawn map as that of the ranch from which the tractor was stolen. The model number "4020" even was noted on the hand-drawn map.