STATE of Maine

v.

Joe M. APPLETON.

Supreme Judicial Court of Maine.

Nov. 29, 1972.

John B. Beliveau, County Atty., Thomas E. Delahanty, II, Asst. County Atty., Auburn, for plaintiff.

Gaston M. Dumais, Lewiston, for defendant.

Before DUFRESNE, C. J., and WEBBER, WEATHERBEE, POMEROY, WERNICK and ARCHIBALD, JJ.

DUFRESNE, Chief Justice.

Joe M. Appleton was tried before jury for the crime of unlawful possession of methamphetamine under 22 M.R.S.A. § 2210 and of unlawful possession of cannabis or marijuana under 22 M.R.S.A. § 2383. He was found guilty of both crimes. Sentenced on the former conviction to a term in Maine State Prison for not less than one year and not more than two years, he appeals to this Court from the judgment on several alleged grounds of error.

He states that

"1. The Court erred in denying Defendant's Motion to Suppress in that—

(a) The affidavit was insufficient on its face to justify the issuing of a search warrant by the Complaint Justice;

(b) The affidavit was insufficient on its face to justify the issuing of a search warrant which was to be executed in the nighttime;

(c) The warrant was illegally executed in that the officer did not give a receipt for the property taken; The inventory was not made in the presence of the Defendant;

The officer, before entering the apartment, did not give his authority and the purpose for his entry;

2. The Court erred in allowing the chemist to testify as an expert.

3. The verdict is contrary to the weight of the evidence.

4. The verdict is not supported by substantial evidence."

I

*Sufficiency of the affidavit respecting probable cause.*

This issue was presented to the trial Court on a motion to suppress evidence seized in

the search of the defendant's apartment on the third floor at 51 Knox Street in the City of Lewiston. The defendant complains about the partial denial of his motion which permitted the methamphetamine seized in the search to be used against him at trial.

The affidavit incorporated by reference in the application for the search warrant and in the warrant itself (See, State v. Hollander, 1972, Me., 289 A.2d 419) reads as follows:

"STATE OF MAINE
ANDROSCOGGIN, SS.

AFFIDAVIT

I, Robert A. Soucy, a Detective sergeant with the Lewiston Police Department and a duly sworn police officer have reasonable grounds to believe that there is an amount of METHAMPHET-AMINE (SPEED) in the appartment (sic) (6) 51 Knox Street Lewiston, Maine. This appartment (sic) is occupied by Joseph Appleton.

My grounds for believing that methamphetamine (speed) is present at the above location are: (1) On this date, a reliable co-operating citizen told me that he had purchased some methamphetamine in this apartment and saw more in the apartment today. (2) This co-operating citizen brought this methamphetamine in to be tested, and the test was positive. (3) This co-operating citizen also bought some methamphetamine on the 24th of August 1971 for us. (4) This cooperating citizen informed us that a [named female] had moved into this apartment with Joseph Appleton. This was checked out with where she used to live at the YWCA. She has not been seen there since Sunday August 22 1971. She was observed by us at 51 Knox St. (4) (sic) This cooperating citizen also bought some LYSERGIC ACID DIETHYLAMIDE (LSD) for us previously.

Having attended a Federal Narcotics school, in Louisville Ky. I have been trained to make certain tests for dangerous drugs and have these kits at my disposal. The reliable co-operating citizen has given us other information in the past that was correct.

Robert A. Soucy

Det. Sergeant Robert A. Soucy

Sworn to before me this 25th day of August, 1971

James F. Cosgrove
James F. Cosgrove
complaint justice                    "

Methamphetamine, the object of the search, was property for which a search warrant could issue, as its possession by the defendant was unlawful under 22 M.R.S.A. § 2210. Rule 41(b)(3), M.R.Crim.P.

The affidavit discloses on its face that probable cause for the affiant's belief that methamphetamine, at the time of the application for the search warrant, was present in the Appleton apartment had to rest heavily upon the word of the unidentified "cooperating citizen" or informant. The officer-affiant's conclusory statement in his application for the search warrant that he had probable cause to believe and did believe there was then being concealed in the apartment methamphetamine and that said contraband was being illegally maintained and possessed contrary to 22 M.R.S.A. §§ 2210, 2215 was for all that appears from the affidavit wholly founded upon the information given to him to the effect that, sometime on the very day of the application for, and execution, of the search warrant, the informant made a purchase of methamphetamine at the apartment and saw some more there at the time. The officer did not personally observe the transaction, nor was he in the apartment at any time before the search. The only nexus between the defendant's apartment and the drug transaction in question was that supplied by the informant's report. The affiant's

personal observation that a named female was seen at that apartment and his confirmation through other sources that she had apparently left her usual habitat for the period of a few days furnished no factual data implying any connection with the type of illegal activity for which the search warrant was being obtained. At best, it only served to identify the apartment where the single sale of methamphetamine took place and thus adduce some credibility to the report. Much, then, depended on the informant's reliability. The affidavit centers the foundational basis for the informant's trustworthiness upon the fact that the informant's purchase at the apartment was turned over to the police who, upon analysis, personally observed it to be methamphetamine and upon the added circumstance that on the previous day the informant at the affiant's request had brought in some methamphetamine which tested out as such. That the August 24 sample was obtained through a purchase as directed remains in the realm of hearsay since no supporting personal observation of the purchase is revealed in the affidavit. The same must be said of the previous requested purchase of lysergic acid diethylamide (LSD), the date of which is not stated.

■ We must approach the question of the validity of the instant search warrant with a view to test it for compliance with the federal constitutional standards of the Fourth Amendment as defined by the Supreme Court of the United States, and, in addition thereto, for conformance with the added requirements of Rule 41, Maine Rules of Criminal Procedure. Under the Rule the affidavit must contain all the information in support of the magistrate's finding of the existence of probable cause. Neither the magistrate nor a reviewing court can go outside the four corners of

the affidavit to determine the existence of probable cause. State v. Hawkins, 1970, Me., 261 A.2d 255; State v. Benoski, 1971, Me., 281 A.2d 128; State v. Cadigan, 1969, Me., 249 A.2d 750. The warrant must stand or fall solely on the contents of the affidavit.[1] Evidence subsequently adduced at a hearing on a motion to suppress cannot be used by the trial court to rehabilitate and redeem an otherwise defective affidavit. United States v. Roth, 1967, 7 Cir., 391 F.2d 507.

■ The Complaint Justice who issued the warrant, however, in his determination of the existence of probable cause was not confined to the direct assertions of facts and circumstances disclosed by the affidavit, but could consider also all reasonable inferences of which such facts and circumstances were reasonably susceptible. State v. Benoski, supra; Irby v. United States, 1963, 114 U.S.App.D.C. 246, 314 F.2d 251, 253, cert. denied, 374 U.S. 842, 83 S.Ct. 1900, 10 L.Ed.2d 1064. But we pointed out in *Benoski* the emphasis which we accorded in *Cadigan* and *Hawkins* to the principle that affidavits which are as to any essential element merely conclusory will not suffice.

■ Affidavits for search warrants, on the other hand, must be tested and interpreted by the magistrate to whom application is made for their issuance and by the courts in appellate review "in a common-sense and realistic fashion" without adherence to unnecessary technical niceties. State v. Benoski, supra; State v. Hawkins, supra; United States v. Ventresca, 1965, 380 U.S. 102, 85 S.Ct. 741, 13 L.Ed.2d 684. Insisting upon magisterial performance in a "neutral and detached" way on the part of the warrant officer as opposed to mere rubber stamping of police requests, review-

---

1. We do not concern ourselves with the possibility that, in certain appropriate circumstances, an "issue of fact necessary to the decision of the motion" under Rule 41(e), M.R.Crim.P., could require the justice hearing the suppression motion to receive evidence tending to mount an attack on the veracity of sworn allegations in an affidavit which is adequate on its face. See, United States v. Thornton, 1971, D.C.Cir., 454 F.2d 957; United States v. Gillette, 1967, 2 Cir., 383 F.2d 843; United States v. Pearce, 1960, 7 Cir., 275 F.2d 318.

ing courts, in balancing the competing interests involved between the requirements of police detection of criminal activity and the protection of the constitutional privilege of privacy, should and must pay substantial deference to the magistrate's determination of probable cause. State v. Hawkins, supra; Aguilar v. State of Texas, 1964, 378 U.S. 108, 84 S.Ct. 1509, 12 L.Ed. 2d 723. Such finding of probable cause is entitled to great weight. Jones v. United States, 1960, 362 U.S. 257, 270, 271, 80 S.Ct. 725, 4 L.Ed.2d 697; United States v. Melvin, 1969, 4 Cir., 419 F.2d 136. As stated in United States v. Ventresca, supra, "the resolution of doubtful or marginal cases in this area should be largely determined by the preference to be accorded to warrants."

■ The central question facing the magistrate when asked to issue a search warrant in the instant case was, whether from all the factual circumstances disclosed in the affidavit and all the reasonable inferences flowing from them he was satisfied the affiant had reasonable grounds at the time of his affidavit and the issuance of the warrant for the belief that the criminal law, in this instance unlawful possession of methamphetamine, was being violated on the premises to be searched, and if the apparent facts set out in the affidavit were such that a reasonably discreet and prudent person would be led to believe that there was a commission of the crime of unlawful possession of methamphetamine, then there was probable cause justifying the issuance of the search warrant. Dumbra v. United States, 1925, 268 U.S. 435, 45 S.Ct. 546, 69 L.Ed. 1032. The existence of probable cause depends upon the facts and circumstances of each case. United States v. Plemmons, 1964, 6 Cir., 336 F.2d 731.

■■ That the information upon which, in whole or in part, a search warrant issues is hearsay to the officer-affiant, as distinguished from facts personally known to him, does not ipso facto negate the existence of probable cause. An affidavit is not to be deemed insufficient by virtue of the mere fact that it sets out personal observations of the informant and not those of the affiant, so long as a substantial basis for crediting the hearsay is presented or the nature of the information be such that the magistrate can properly infer that it was received by the informant in a reliable way. Jones v. United States, 1960, 362 U.S. 257, 80 S.Ct. 725, 4 L.Ed.2d 697; State v. Hawkins, supra. Where an affidavit is based on hearsay information, the magistrate must be informed through the affidavit of some of the underlying circumstances from which the informant concluded that the narcotics were where he claimed they were, and some of the underlying circumstances from which the officer-affiant concluded that the informant, whose identity need not be disclosed, was credible or his information reliable. State v. Cadigan, supra; Aguilar v. State of Texas, supra.

■ The constitutional restrictions upon searches and seizures were obviously designed for citizen protection against official invasion of privacy and the security of property. The exclusionary rule in respect to unreasonable searches and seizures was adopted as a means for efficient enforcement of the constitutional mandate. Such evidence, if it were to be considered by the magistrate issuing the warrant, would be relevant evidence and by no means that type of evidence deemed inherently unreliable or prejudicial. Under such circumstances, it is entirely proper to require of one who seeks to challenge the legality of a search as the basis for suppressing relevant evidence that he allege and prove his charge of illegality. Jones v. United States, 1960, 362 U.S. 257, 80 S.Ct. 725, 4 L.Ed.2d 697; Chin Kay v. United States, 1962, 9 Cir., 311 F.2d 317; Batten v. United States, 1951, 5 Cir., 188 F.2d 75.

■ A reading of the affidavit reveals that the officer-affiant made no personal observations respecting any criminal activity at the apartment of the defendant designated therein as being apartment (6) at 51 Knox Street, in Lewiston, Maine.

The fact that on the twenty-fifth day of August, 1971, the same day the affidavit was made, the search warrant issued and executed, a purchase of methamphetamine was transacted in the reference apartment and that there was "more" actually seen in the place, depended wholly upon the personal observation of the unidentified informant. . This was hearsay evidence and before the magistrate could accept the same and conclude that narcotics were probably present at the time in the apartment, the officer-affiant had to establish in his affidavit a reasonable basis upon which the magistrate could himself reach the conclusion that the affiant as a prudent and discreet person could credit the hearsay or determine that the information was reliable. The informant's alleged ability to obtain some methamphetamine the previous day at police request from some undisclosed place or person without any corroborating circumstance of the factual assertion that he purchased it, as well as his previous alleged purchase of LSD at an indefinite time in the past, have little probative value tending to indicate that the informant should be believed respecting his stated purchase of methamphetamine in the defendant's apartment on August 25, 1971. However, the informant's delivery of the methamphetamine to the officer-affiant on the same day of his asserted purchase of the same from the defendant's apartment carries inherent credibility value of some probative force in that such action in and of itself involved him in the commission of crime, since his possession of the narcotic contraband was a criminal offense. An informant is not likely to turn over to the police such criminal evidence unless he is certain in his own mind that his story implicating the persons occupying the premises where the sale took place will withstand police scrutiny.

What quantum of information is necessary to support an affiant's belief that an unidentified informant's information is truthful has recently been considered by the Supreme Court of the United States in the landmark case of United States v. Harris, 1971, 403 U.S. 573, 91 S.Ct. 2075, 29 L.Ed.2d 723. In that case, Mr. Chief Justice Burger emphasized that common sense in the important daily affairs of life would induce a prudent and disinterested observer to credit statements of an informant which are against his penal interest. We must agree—

> "People do not lightly admit a crime and place critical evidence in the hands of the police in the form of their own admissions. Admissions of crime, like admissions against proprietary interests, carry their *own indicia of credibility*— sufficient at least to support a finding of probable cause to search." (Emphasis supplied.)

It is unnecessary for us to decide how far we should extend the rule which justifies the admission of declarations against interest as an exception to the hearsay rule to declarations against one's penal interest beyond the factual scope of the instant case. See, State v. O'Clair, 1972, Me., 292 A.2d 186. We do rule, however, that such conduct on the part of an informant may justify an affiant's reasonable belief of credibility of the informant's story in support of the magistrate's finding of probable cause.

This brings us to the defendant's next contention that the affidavit was insufficient on the probable cause issue because of the absence therein of any averment as to the time of day when the affiant received his information from the anonymous informant or as to the time of day when the informant made his purchase of methamphetamine in the apartment to be searched. We must point out that, contrary to the facts in Rosencranz v. United States, 1966, 1 Cir., 356 F.2d 310, the affidavit does disclose that the purchase of the narcotic drug was concluded on the day of the making of the affidavit and the issuance and execution of the search warrant, i. e. on the twenty-fifth day of August, 1971. The Complaint Justice was aware of the time

when on August 25, 1971 the affidavit was signed and the warrant issued. We gather from the suppression hearing that these acts took place between 7:00 and 7:15 p. m. on that day. The time of day when the purchase was made undoubtedly was kept out of the affidavit to protect the anonymity of the informant. We must assume that the Complaint Justice followed the law and did not tap external sources of information in determining the existence of probable cause. We are aware of the ruling in *Rosencranz* that the officer-affiant—

> "must set forth the basis for the magistrate's inferences with enough precision so that, if the affidavit is subjected to an attack for lack of probable cause at a subsequent hearing, the trial judge will be ruling on the reasonableness of inferences based on the same underlying circumstances as confronted the commissioner [the Complaint Justice]."

Where the single purchase is related to the day of the making of the affidavit and issuance of the warrant and where the affidavit further discloses that the informant saw more of the narcotic drug in the apartment, the Rosencranz requirements were fully satisfied. Interpreting the affidavit in a commonsense way, the Complaint Justice was justified in inferring that the purchase would not have been made prior to 8 or 9 a. m. on that day (a reasonable time to make a call in the morning) and, taking into consideration that more of the narcotic drug was seen at that time, he was further justified as a discreet and prudent person in believing that there probably was some more there at the time he issued the warrant.

■ Search warrants have been sustained on affidavits disclosing single sale of contraband in the place to be searched on the day before the making of the affidavit. United States v. Barbini, 1928, D.C.Cal., 26 F.2d 237; United States v. Ghiorsi, 1929, D.C.Cal., 31 F.2d 440; Ewing v. United States, 1930, 5 Cir., 37 F.2d 287.

To the contrary, United States v. Sands, 1926, D.C.Wash., 14 F.2d 670. There is no hard and fast rule as to how much time may intervene between the obtaining of the facts and the making of the affidavit upon which the search warrant is based, but the lapse of time between the time of the observations and the time of the affidavit should not be too great. Facts other than the mere single sale may be presented in the affidavit to establish the probable continuing presence of contraband in the place to be searched allowing for a longer period of time between the observation of the facts and the time of the making of the affidavit. In the instant case, where the single sale was made on the same day as the affidavit and the issuance of the warrant, together with the informant's declaration that he saw more in the apartment, we cannot say that the Complaint Justice, at the time he issued the warrant, was not justified in believing that in all probability methamphetamine was still present in the apartment.

## II

*Sufficiency of the affidavit to support a nighttime search.*

■ The defendant contends that the facts presented by the affidavit were not such as to bring the case within the meaning of Rule 41(c), M.R.Crim.P. which says that

> "[t]he warrant shall direct that it be served in the daytime, *but if the affidavits are positive that the property is* on the person or *in the place to be searched,* the warrant may direct it to be served at any time." (Emphasis added.)

The Rule may be satisfied respecting affidavit positiveness, where the affiant's conclusion is based on hearsay from a reliable informant. See, United States v. Plemmons, 1964, 6 Cir., 336 F.2d 731; United States v. Arms, 1968, 6 Cir., 392 F.2d 300.

■ We do recognize that Rule 41(c) requires a greater quantum of facts to be disclosed in the affidavit than that necessary only to support a belief that the property probably is to be found in the premises for which a daytime-search warrant is being sought. On the other hand, the factual recital need not be such as to generate belief beyond a reasonable doubt and exclude the possibility that the contraband might have been removed. The Rule does not require the magistrate to find positively that the property is in the place to be searched, but only that the affidavit is positive, i. e. discloses sufficient facts to warrant the affiant in asserting a positive belief. United States v. Arms, supra.

■ The reason for the somewhat higher standard of factual assertions in affidavits to justify the issuance of nighttime-search warrants imposed by Rule 41(c) lies in the peculiar abrasiveness of official intrusions at such periods. Intrusion into an occupied home in the middle of the night is plainly a greater invasion of privacy than entry during the day. The Complaint Justice in the present case was dealing with a request for a nighttime-search warrant at about 7:15 in the evening of August 25, 1971 which he could infer would be executed in the early part of the evening and not in the middle of the night, since under Rule 41(c) the warrant commanded the officer to search the apartment "forthwith" and since proper police enforcement of the narcotic laws would seem to require the search to be made without unreasonable delay. We are of the view, as was the Court in United States v. Daniels, 1950, D.C. New Jersey, 10 F.R.D. 225, that the additional stricture imposed by the rule for authorization of a nighttime-search warrant consists in the following:

" * * * the rule requires nothing more than an explicit statement, supported by positive evidence, as distinguished from negative evidence, 'that the property is in the place to be searched.' The explicit statement may not rest upon infer-ences drawn from the absence of evidence. The rule requires averments of fact sufficiently persuasive to support a reasonable inference that the property is in fact on the premises. A more rigid construction would require proof beyond a reasonable doubt that the property is in the place to be searched. Such a construction would enable the criminal to completely conceal an illegal enterprise behind an insurmountable barrier, provided, of course, he pursued it only at night."

Having in mind that "the resolution of doubtful or marginal cases in this area should be largely determined by the preference to be accorded to warrants" (United States v. Ventresca, supra), we sustain the validity of the issuance of the search warrant for nighttime execution in the instant case within the limits of the facts disclosed in the reference affidavit.

### III

*Improper execution of the search warrant.*

■ The defendant says that Rule 41 (d) was not complied with, in that the officer taking property under the warrant did not give to him from whose premises the property was taken a receipt for the property taken while on the premises and that the inventory was not made in his presence, where he was then present on the premises. The evidence at the suppression hearing disclosed undisputably that the police violated the requirements of the Rule in that respect. In State v. Martelle, 1969, Me., 252 A.2d 316, we forcefully called attention to the Rule which contemplates the right in the person whose apartment is being searched to be present in the areas being searched while the search is going on and stated that the police had no authority to remove the occupant from the areas being searched on the mere pretense that the search will be rendered ineffective un-

less made in his absence, except where actual interference is demonstrated or probable cause for need of the occupant's exclusion for police protection is shown. It was further pointed out that the officers were not authorized to remove the occupant prior to the making of the inventory of the property taken except for exigent circumstances. The officers under the Rule have no more right to remove the occupant until a receipt of the property taken is furnished him. We still hold, as we did in *Martelle*, that noncompliance with the ministerial demands of the rule will not invalidate the search and seizure under the warrant. We hasten to add that persistent official disregard of these ministerial duties may cause us to adopt an exclusionary rule to compel police obedience.

■ The defendant next argues that, by reason of the police's alleged failure before entry to give notice of their presence, authority and purpose, the search, even though under the search warrant, became an unreasonable search within the ban of Fourth-Fourteenth Amendment mandate. We recognize that police execution of search warrants, especially in the case of nighttime entries in homes, tend to disturb the security of the people which the Federal and State Constitutions set out to protect and that unannounced forcible entries, even when narcotics are involved, may, in the absence of exigent circumstances, be so unreasonable as to violate the spirit and letter of the constitutional provisions. See, People v. Gastelo, 1967, 67 Cal.2d 586, 63 Cal.Rptr. 10, 432 P.2d 706; Ker v. State of California, 1963, 374 U.S. 23, 83 S.Ct. 1623, 10 L.Ed.2d 726. Assuming for the purpose of disposing of this contention that constitutional requirements made it necessary for the police to announce, prior to entry, their presence, authority and purpose, we rule the findings of the Court below that the police did knock, state their authority and purpose and thereafter were let into the apartment, were not clearly erroneous and raise no valid point on appeal.

## IV

*Admissibility of expert chemist's testimony.*

■ The State's expert testified that he graduated from the University of Maine in 1969 with a Bachelor of Science degree; that following graduation, he taught science and "math" until June of 1970 when he joined the State laboratory as a chemist; that thereafter he tested police evidence for their drug contents on at least 50 occasions; that he was familiar with known charts accepted in the field as proper determinants of certain drugs and how to operate machines used in the laboratory for comparison readings of sample tests of unknown substances; that he testified in courts of this State as an expert on many occasions. Full cross-examination in no way destroyed his qualifications as an expert. The witness' expertise was for the presiding Justice's determination as a preliminary question and his decision thereon is not subject to reversal except for abuse of sound judicial discretion. There was no error on that score. The witness disclosed special training and familiarity with the subject matter of chemical tests for drugs qualifying him as an expert in the field. His testimony was for jury evaluation. State v. Fitzherbert, 1969, Me., 249 A.2d 760.

## V

*Sufficiency of evidence to support the verdict.*

No purpose would be served in reciting at length the evidence that produced the defendant's conviction at the hands of the jury. All we need say is that, in view of all the evidence, the jury was justified in believing beyond a reasonable doubt that the defendant was guilty of the crime of unlawful possession of methamphetamine.

The entry will be

Appeal denied.

All Justices concurring.