NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 07a0694n.06
Filed: September 25, 2007

No. 06-5030

## UNITED STATES COURT OF APPEALS
## FOR THE SIXTH CIRCUIT

|  |  |  |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff-Appellee, | ) | |
| | ) | |
| v. | ) | ON APPEAL FROM THE UNITED |
| | ) | STATES DISTRICT COURT FOR THE |
| WILLIAM H. BRADEN, | ) | EASTERN DISTRICT OF KENTUCKY |
| | ) | |
| Defendant-Appellant. | ) | |

Before: MOORE and COOK, Circuit Judges; and ACKERMAN, District Judge.[*]

COOK, Circuit Judge. William H. Braden appeals the district court's denial of his motion to suppress. We affirm.

I

Kentucky State Trooper Shane Goodall, responding to an early-morning domestic-disturbance call at Sarah and Charles Lilly's home, found the couple under the influence of drugs. Sarah Lilly claimed people lurked under the house; Charles Lilly heard noises, saw the floorboards moving, and thought armed men were pulling a freezer out from under the house.

---

[*]The Honorable Harold A. Ackerman, Senior United States District Judge for the District of New Jersey, sitting by designation.

Confirming Goodall's suspicion, the couple admitted to smoking crystal methamphetamine that morning. Sarah Lilly showed Goodall her remaining one gram and revealed her source: Michael Hugley gave her the drugs, she said, for cleaning his trailer. She also told Goodall that she saw other drugs and weapons in that trailer. When asked the location of the trailer, Lilly could not give the trooper directions, but she knew the street was Reeves Branch Road. When Goodall drove her to Reeves Branch Road, she visually identified the trailer.

With this information, Goodall sought a search warrant through an affidavit with the following description of his investigation:

> Upon arrival to scene, both subjects appeared to be under the influence of illegal drugs. Upon investigation by affiant, Charles and Sarah Lilly admitted to smoking meth prior to affiant's arrival. While talking to Sarah Lilly, she showed affiant where she kept the meth and used drug paraphernalia. Sarah Lilly stated the meth was given to her for cleaning a trailer for Michael Hugley. Sarah Lilly also advised affiant that she had seen multiple weapons that she thought to be stolen and also seen a large amount of illegal drugs. Sarah Lilly visually identified the residence as which was described to affiant.

The affidavit went on to describe the location to be searched as follows:

> Traveling from Route 2, approximately 7 miles on US 60 West of Olive Hill, Kentucky. Turn right onto Reeves Branch, Olive Hill, KY, traveling approximately 4/10 of a mile, situated on the right side of roadway more specifically as follows: A mobile home white/brown in color, red well box in front yard, small wood front porch, brown wood one car garage situated to the right of mobile home, having a mailbox with the words "Howdy Damn It" and green address sign "440" on mailbox post. Also green/white mobile home situated behind above-mentioned mobile home. And all structures and out buildings situated on said property.

The search of the trailer, which Braden occupied (though Sarah Lilly named Hugley as the occupant), produced eighteen grams of crystal methamphetamine and thirteen firearms. Braden challenges on several grounds the denial of his suppression motion.

II

Braden first asserts error in the district court's failure to conduct a *Franks* hearing before denying his suppression motion to examine whether Goodall concealed from the magistrate the severity of Sarah Lilly's intoxication. In *Franks v. Delaware*, 438 U.S. 154, 171 (1978), the Supreme Court emphasized the long-standing "presumption of validity with respect to the affidavit supporting [a] search warrant." The Court explained, however, that a criminal defendant could challenge the legitimacy of a search under certain circumstances by attacking the truthfulness of the allegations made in the affidavit supporting the warrant application. *Id.* *Franks* directs "a court considering whether to suppress evidence based on an allegation that the underlying affidavit contained false statements [to] apply a two-part test: (1) whether the defendant has proven by a preponderance of the evidence that the affidavit contains deliberately or recklessly false statements and (2) whether the affidavit, without the false statements, provides the requisite probable cause to sustain the warrant." *United States v. Charles*, 138 F.3d 257, 263 (6th Cir. 1998). Carrying this burden entitles the defendant to a hearing to determine if a preponderance of the evidence supports the allegations of lack of truthfulness. *Franks*, 438 U.S. at 171–72.

Though Goodall's affidavit includes no allegedly false statements, courts read *Franks* as targeting alleged omissions of information from affidavits as well. *Mays v. City of Dayton*, 134 F.3d 809, 815 (6th Cir. 1998). But consistent with the *Franks* presumption of validity, "affidavits with potentially material omissions, while not immune from *Franks* inquiry, are much less likely to merit a *Franks* hearing than are affidavits including allegedly false statements." *Id.* (citing *United States v. Atkin*, 107 F.3d 1213, 1217 (6th Cir. 1997)). Without "a strong preliminary showing that the affiant *with an intention to mislead* excluded critical information from the affidavit, . . . *Franks* is inapplicable to the omission of disputed facts." *Id.* at 816.

Here, in the absence of a strong preliminary showing that Goodall omitted the extent of Lilly's intoxication "*with an intention to mislead*," the district court properly denied the hearing request. *Id.* Though lacking rich detail about Sarah Lilly's mental state, the trooper's affidavit reporting that Lilly "appeared to be under the influence of illegal drugs . . . and admitted to smoking meth prior to affiant's arrival" vitiates any claim of an intention to mislead the magistrate about Lilly's mental state. *See Atkin*, 107 F.3d at 1216–17 (no intent to mislead where affidavit alerted judge that informants "were persons whose veracity could be questioned").

Braden next disputes the sufficiency of the affidavit to support a finding of probable cause, pointing to the affidavit's failure to establish Lilly's reliability, to reference the specific time when she observed the guns and drugs, or to identify Braden or his residence. We review the sufficiency of an affidavit in a "commonsense, rather than hypertechnical manner," *United States v. Greene*, 250

F.3d 471, 479 (6th Cir. 2001), and ask "whether the magistrate had a substantial basis for finding that the affidavit established probable cause to believe that the evidence would be found at the place cited," *id.* at 478 (quoting *United States v. Davidson*, 936 F.2d 856, 859 (6th Cir. 1991)). "Probable cause exists when there is a fair probability, given the totality of the circumstances, that contraband or evidence of a crime will be found in a particular place." *Id.* at 479 (internal quotation marks omitted). The "substantial basis" standard accords the magistrate's determination of probable cause great deference, and we will reverse its decision to grant a search warrant only if "arbitrarily" made. *Id.* (citing *United States v. Allen*, 211 F.3d 970, 973 (6th Cir. 2000) (en banc)). Reviewing Goodall's affidavit in a commonsense manner, we hold that the magistrate had a substantial basis for finding probable cause.

In *United States v. Pelham*, 801 F.2d 875, 878 (6th Cir. 1986), we upheld as sufficient an affidavit stating only that the named informant had seen the defendant sell drugs in his home within the past twenty-four hours. The *Pelham* court observed that "there could hardly be more substantial evidence of the existence of the material sought and its relevance to a crime than [the informant's] direct viewing of marijuana in [the defendant's] house." *Id.* "*Allen* and *Pelham* make it clear that independent corroboration of an informant's story is not necessary to a determination of probable cause."[1] *United States v. McCraven*, 401 F.3d 693, 698 (6th Cir. 2005).

_____

[1]Braden misunderstands the different types of informants in arguing that probable cause requires corroboration, relying on cases that involved either an unnamed, confidential informant or an anonymous informant. *See, e.g.*, *Illinois v. Gates*, 462 U.S. 213 (1983) (anonymous informant); *United States v. Frazier*, 423 F.3d 526 (6th Cir. 2005) (confidential informant and anonymous

Because the affidavit named Lilly herself as having personally observed drugs at Braden's residence, the magistrate could credit Lilly's tip, volunteered against her interest, as reliable without police corroboration or other indicia of reliability. *See McCraven*, 401 F.3d at 697–98; *Allen*, 211 F.3d at 976; *see also United States v. Harris*, 403 U.S. 573, 584 (1971) (courts may consider informants who volunteer information against their interests reliable). True, Lilly had smoked meth prior to offering the tip. But knowledge of her intoxication from the trooper's affidavit was among the factors the magistrate needed to consider in assessing whether probable cause existed. And as this court recently recognized in the context of a *Franks* challenge, "Although it is possible that an angry and intoxicated person may be less reliable than a detached and uninterested observer who is sober, it is equally possible that those same factors can make a witness more inclined to be truthful than they otherwise might." *Hale v. Kart*, 396 F.3d 721, 730 (6th Cir. 2005).

As another alleged failing in the district court's decision to deny suppression, Braden targets the absence of facts pointing to the recency of the evidence relied on for the warrant—*when* Lilly observed the guns and drugs. Staleness concerns, however, are met here as the affidavit noted that Lilly had not yet exhausted the drugs supplied to her at the trailer. *See Pelham*, 801 F.2d at 878; *see*

---

informant); *McCraven*, 401 F.3d 693 (upholding *Pelham*, but elaborating on the standards for a confidential informant); *Allen*, 211 F.3d 970 (confidential informant); *United States v. Tuttle*, 200 F.3d 892, 894 (6th Cir. 2000) (confidential informant); *United States v. Weaver*, 99 F.3d 1372 (6th Cir. 1996) (confidential informant); *United States v. Leake*, 998 F.2d 1359 (6th Cir. 1993) (anonymous informant); *United States v. Smith*, 783 F.2d 648, 651 (6th Cir. 1986) (confidential informant). Nevertheless, counsel cites *Smith*, 783 F.2d 648, for the proposition that even a "known, reliable" informant's tip requires corroboration, but in *Smith*, the "known, reliable" informant was a *confidential* informant known to be reliable, but not named in the affidavit. *Id.* at 649.

*also Sgro v. United States*, 287 U.S. 206, 210–11 (1932) (expiration of probable cause determined by the circumstances of each case). The magistrate could also reasonably adduce from Lilly's report of seeing large drug quantities and multiple weapons that 440 Reeves Branch served as a base for ongoing drug activity. *United States v. Henson*, 848 F.2d 1374, 1382 (6th Cir. 1988) ("'[I]f an affidavit recites activity indicating protracted or continuous conduct, time is of less significance.'" (quoting *United States v. Haimowitz*, 706 F.2d 1549, 1554–55 (11th Cir. 1983))). Because these circumstances evince a "substantial basis for determining the existence of probable cause," *Illinois v. Gates*, 462 U.S. 213, 239 (1983), Braden's challenge grounded on its absence fails.

As a final objection, Braden calls attention to the warrant's omission of a "description of the location given or naming of the Appellant," but Braden then neglects to offer any supporting argument for our finding prejudicial error therefrom. It is axiomatic that "issues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived." *United States v. Layne*, 192 F.3d 556, 566 (6th Cir. 1999) (citation omitted). Regardless, this claim lacks merit because the particularity required by the Fourth Amendment "is *not* as to the person against whom the evidence is to be used but rather as to the place to be searched," *Mays*, 134 F.3d at 814, and, because the affidavit sufficiently detailed the place to be searched, no "reasonable probability [existed] that another premises might be mistakenly searched," *United States v. Durk*, 149 F.3d 464, 465 (6th Cir. 1998) (internal quotation marks omitted).

Given our conclusion that probable cause supported the warrant, we do not address Braden's

challenge to the district court's alternate grounds for denying suppression—the *Leon* good-faith

exception. We affirm.

**KAREN NELSON MOORE, Circuit Judge, dissenting.** I agree with the majority's description of this circuit's taxonomy of informants; our caselaw identifies named informants, unnamed (or confidential) informants who are known to the police but not to the magistrate, and anonymous informants. Maj. Op. at 5 n.1. As each category of informant presents its own issues of reliability, the majority is correct that we apply different legal standards in cases involving unnamed informants, anonymous informants, and named informants. This case involves a named informant, so I direct my attention to our precedent in that narrow area of law. A review of this court's precedent on named informants leads me to conclude that the naming of informants indicates reliability only when the informants *willingly and knowingly* assent to an officer naming them and the risk of prosecution inherent in that identification. In this case, because the informant was hallucinating, I cannot conclude that she willingly and knowingly assented. In the absence of any other indicia of reliability, the fact that the informant was named does not alone provide a substantial basis for probable cause.

That an informant is named supports a conclusion of reliability only to the extent that it signifies that the informant knowingly risks punishment if the tip is faulty. The majority opinion references *United States v. Harris*, 403 U.S. 573 (1971), where four members of the Supreme Court suggested that an informant's statement against his penal interest is reliable because "[p]eople do not lightly admit a crime and place critical evidence in the hands of police," *id.* at 583 (Burger, C.J.,

plurality). Significantly, Chief Justice Burger spoke for only four members of the Court.[2] The true

relevance of *Harris* is to help explain our distinction between named informants on the one hand,

and unnamed and anonymous sources on the other. 2 WAYNE R. LaFAVE, SEARCH AND SEIZURE

§ 3.3(c) at 133 (4th ed. 2004) (approving of the analysis that Justice Harlan's opinion for four

Justices "did not so much quarrel with the general proposition that a genuine declaration against

penal interest would be some guarantee of trustworthiness, but only with the application of that

principle to" certain unnamed informants (quoting *Stanley v. State*, 313 A.2d 847, 856 n.8 (Md. Ct.

Spec. App. 1974)).

Chief Justice Burger's opinion in *Harris* does not, by itself, explain why our cases give

additional credence to a named informant; the danger to the informant inherent in admitting a crime

to the police exists regardless of whether the informant is named in the affidavit or not. *See Harris*,

403 U.S. at 585. Indeed, the informant in *Harris* was never named for the magistrate. *Id.* at 575.

Justice Harlan's opinion in *Harris*, however, sheds light on the basis for the distinction between

named and unnamed or anonymous sources. Justice Harlan, leading three other Justices, thought that

---

[2]Although Justice Stewart joined with Chief Justice Burger in the judgment of the court, he signed on only to the part of the opinion that considered the entire factual basis for the warrant, *Harris*, 403 U.S. at 579-80 ("[W]e conclude that the affidavit in the present case contains an ample factual basis for believing the informant which, when coupled with the affiant's own knowledge of the respondent's background, afforded a basis upon which a magistrate could reasonably issue a warrant."), and did not make any assertions regarding the effect of a statement against penal interest other than to note that the informant made one, *id.* at 580 ("The accusation by the informant was plainly a declaration against interest since it could readily warrant a prosecution and could sustain a conviction against the informant himself.").

a statement against penal interest was not necessarily an indicator of reliability. *Id.* at 594 (Harlan, J., dissenting). In support of this argument, Justice Harlan noted that an unnamed informant remains unnamed because the police intend to continue using the source.[3] If the police intend to keep their source viable, the informant likely does not fear prosecution, even for a statement against his penal interest. *Id.* at 595. Thus, the distinction between named and unnamed-but-known informants has significance because naming removes the cloak of protection against prosecution whereas "an admission against penal interest" by someone protected by the police "carries little weight." LAFAVE, § 3.3(c) at 136.

According to Justice Harlan, the mere fact that a statement happens to be against an informant's penal interest has no bearing on the informant's potential veracity. Instead, it is only when an informant recognizes the danger in misleading officers that the informant is more likely to speak truthfully. We have adopted this position in *United States v. Pelham*, 801 F.2d 875 (6th Cir. 1986), *cert. denied*, 479 U.S. 1092 (1987), where we emphasized that an informant was "*willing* to be named in the affidavit." *Id.* at 878 (emphasis added). More recently, in *United States v.*

---

[3]Revealing the identity of an informant almost always makes the source worthless in the future. *See* William J. Stuntz, *Warrants and Fourth Amendment Remedies*, 77 VA. L. REV. 881, 939 (1991) ("In those rare cases where magistrates do require disclosure of the identity of a police informant, the government concedes defeat rather than disclose, thereby sacrificing the search (and presumably sometimes the whole prosecution). This practice confirms what should perhaps be obvious: informants who offer valuable tips to the police will disappear if they think their position might be compromised by disclosure, even disclosure only to judicial officers. It also suggests that the real choice the system faces is not between unnamed informants and named ones, but between unnamed informants and none at all." (footnote omitted)).

*McCraven*, 401 F.3d 693 (6th Cir.), *cert. denied*, 546 U.S. 1010 (2005), a case the majority relies upon heavily, this court again spoke of "an informant's *willingness*" to be named. *Id.* at 698 (emphasis added). The choice of words we have used repeatedly emphasizes Justice Harlan's point: a statement against penal interest can indicate reliability only where the informant understands his statement as a threat against his penal interest and recognizes the potential for prosecution. *See United States v. Chafin*, 622 F.2d 927, 930 (6th Cir.) (describing the choice to admit to associating with the principals to a murder as one that an informant "would not lightly make"), *cert. denied*, 449 U.S. 984 (1980); *see also Harris*, 403 U.S. at 583 (Burger, C.J., plurality) (noting that "[p]eople do not lightly admit a crime" and thus implying that it is a considered and deliberate choice).

In some cases this court has not used the language of choice and awareness. In those circumstances, however, there were other reasons for crediting the informant's testimony. For instance, in some cases the police bolstered the informant's testimony through corroboration. *See, e.g.*, *Wolfe v. Perry*, 412 F.3d 707, 718 (6th Cir. 2005); *United States v. Rosenbarger*, 536 F.2d 715, 719 (6th Cir. 1976), *cert. denied*, 431 U.S. 965 (1977). In other cases this court relied on a statute that made it a crime to provide to the police false information. *See, e.g.*, *United States v. Couch*, 367 F.3d 557, 560-61 (6th Cir. 2004); *United States v. Miller*, 314 F.3d 265, 270 (6th Cir. 2002), *cert. denied*, 539 U.S. 908 (2003). As this case also arose in Kentucky, the same statute involved in *Couch* and *Miller* is relevant here. *See* KY. REV. STAT. ANN. § 519.040(1). The fact that the statute was in place, however, does not mean that any informant is necessarily reliable. Instead, *Harris*'s knowledge-and-willingness rationale applies; for the statute to impact the informant's veracity, the

informant must have been aware that lying to the police would be a dangerous choice. *See* LAFAVE, § 3.3(c) at 149-50 ("[I]t may be argued that information given to police may be found reliable where the making of a false crime report is a criminal offense, in that once again adverse consequences may follow if the allegations later turn out to be untrue, but *this would not be persuasive absent a showing the informant was aware that such an offense existed and that there was a real risk of prosecution should his information prove false*." (emphasis added) (footnotes omitted)).

I dissent because Sarah Lilly, the informant here, despite admitting to buying and using methamphetamine against her penal interest, was not a reliable informant. At the time they called the police, Lilly and her husband were in the throes of a hallucinogenic episode; they believed the floor was pushing upwards, and that a crowd of people was outside their home pulling a freezer from underneath their house. Joint Appendix ("J.A") at 39 (Uniform Offense Rep. at 3). The very fact that the Lillys saw no problem with calling the police while under the profound effects of methamphetamine belies any assertion that they could appreciate the risk in making incriminating statements to the police. Lilly's statements to the police were not the product of the considered and careful weighing of the threat to her penal interests that our precedent requires before such statements can be considered reliable. *See Armour v. Salisbury*, 492 F.2d 1032, 1035 (6th Cir. 1974) (concluding that a statement against penal interest is only "sometimes conclusive" and evaluating the entirety of the affidavit for credibility); *see also State v. Gamage*, 340 A.2d 1, 17 (Me. 1975) (holding that a statement against penal interest "*may* justify an affiant's reasonable belief of credibility of the informant's story" (emphasis added)). Instead, Lilly's tip was nothing more than

the statement of an uncorroborated and unreliable informant, which cannot alone sustain probable

cause.[4]

The majority suggests that we should still consider Lilly's statement reliable because

sometimes intoxicated people are more honest than their sober counterparts. Maj. Op. at 6. To

buttress this assertion, the majority relies upon *Hale v. Kart*, 396 F.3d 721 (6th Cir. 2005). Unlike

the case at hand, however, in *Hale* the informant was so minimally intoxicated that the officers could

not have known. *Id.* at 730 (concluding "there is no evidence that [the intoxication] was ever

observed or could have been" observed by the officer). Similarly, in the circumstance that officers

"did not feel that [the informant] was either under the influence of heroin or in a state of

withdrawal," the Ninth Circuit did not consider the statements "per se unreliable." *United States v.*

*Damitz*, 495 F.2d 50, 56 (9th Cir. 1974). In stark contrast, in this case the officer was immediately

suspicious of Lilly's sobriety, J.A. at 39 (Uniform Offense Rep. at 3) ("When she opened the door

she appeared to possibly be under the influence of a narcotic."), and quickly confirmed those

---

[4]As a variant of the statement-against-penal-interest approach, some courts have found that informants are reliable when they turn over narcotics to the police. *See, e.g.*, *United States v. Damitz*, 495 F.2d 50, 55 (9th Cir. 1974); *Schmidt v. State*, 253 N.W.2d 204, 208 (Wis. 1977); *State v. Gamage*, 340 A.2d 1, 17 (Me. 1975); *State v. Appleton*, 297 A.2d 363, 369 (Me. 1972). Again, just like with statements against penal interests, the assumption of reliability makes sense only where the informant makes a willing and conscious decision. *See Appleton*, 297 A.2d at 369 (discussing how an informant will turn over narcotics only when "he is certain in his own mind that his story implicating the persons occupying the premises where the sale took place will withstand police scrutiny"). Although Lilly did turn over to the police some crystal methamphetamine, J.A. at 39-40 (Uniform Offense Rep. at 3-4), her hallucinogenic state suggests she could not have made a considered decision regarding the contraband.

suspicions, *id*. Although our case law certainly does not require toxicology reports before an informant can be considered reliable, I believe nothing in our precedent suggests that, when the informant is clearly hallucinating, the police are justified in concluding that the informant is reliable. Indeed, common sense compels the conclusion that clearly hallucinating informants are not reliable and their accusations cannot serve as the basis for probable cause without independent corroboration. *See Illinois v. Gates*, 462 U.S. 213, 230 (1983) (calling probable cause a "commonsense, practical question"); *Harris*, 403 U.S. at 583-84 (Burger, C.J., plurality) (noting that the statement against an informant's penal interest is reliable because "[*c*]*ommon sense* in the important daily affairs of life would induce a prudent and disinterested observer to credit these statements." (emphasis added)); *Armour*, 492 F.2d at 1035 (holding that a statement against penal interest is only "sometimes conclusive" and applying *Harris*'s common-sense standard to determine the existence of other indicia of credibility); *Wilson v. State*, 314 A.2d 905, 907 (Del. 1973) ("[I]t appears that at the time the informant related the information to the police she was hospitalized for a drug overdose. Because her rationality and credibility could have been impaired thereby, it was incumbent upon the police, in our opinion, to verify her statements . . . .").

Lastly, in further support of finding the informant reliable, the majority opinion heavily cites *United States v. McCraven*, 401 F.3d 693 (6th Cir. 2005), to assert that a statement against penal interest connotes reliability. I believe this reliance is misplaced. First, *McCraven* contains only dicta regarding an informant's reliability. The *McCraven* court thought the sufficiency of the affidavit was "a close question," and instead of resolving the matter, simply decided that the search in question

was in good-faith under *United States v. Leon*, 468 U.S. 897 (1984), and was therefore valid "even if the affidavit be deemed insufficient." *McCraven*, 401 F.3d at 698. Second, even if the *McCraven* court had actually addressed the issue of probable cause, *McCraven* involved an unnamed, confidential informant, so this court merely noted for the sake of comparison that being named is a "predictor of reliability," *id.* at 698, but never said naming an informant is sufficient for a finding of reliability. Because *McCraven* is a *Leon* case and expressly declined to resolve whether the affidavit was sufficient, its comments are dicta and the case is inapposite.

In contrast, I believe that this court's precedent establishes that where an informant is incapable of willingly considering the implications of admitting involvement in a crime to the police, then the informant is not per se reliable. The magistrate must make "a balanced assessment of the relative weights of all the various indicia of reliability (and unreliability) attending an informant's tip." *Gates*, 462 U.S. at 234. In this case, because the police did nothing else other than rely on the testimony of an unreliable and hallucinating informant, the affidavit failed to provide a substantial basis for probable cause. For these reasons, I respectfully dissent.